on behalf of the appellant Lauren Varner. We are here today, Your Honor, on two disputed or appealed orders of the District Court. The order granting defendant Michael Roane's motion for summary judgment as to plaintiff Lauren Varner's claim for an unlawful seizure as well as a District Court's order granting motion for summary judgment of Michael Roane on Mr. Varner's claim for illegal search of his truck. Addressing the first order, Your Honor, I believe we have a fairly straightforward issue in front of us, which is that the District Court simply fails to consider the plausible, I'm sorry, the concluded true facts at this litigation stage in the light most favorable to the plaintiff to determine that those facts did not plausibly suggest a claim for an unlawful seizure. The facts of the issue, Your Honor, are fairly simple. Mr. Varner was in the tailgate bar and grill having a meal, having just been released after having been arrested by Michael Roane on another case. Mr. Varner's, in the middle of Mr. Varner's meal, Michael Roane entered the establishment, marched directly to Mr. Varner, ordered him to upon exiting the restaurant, Michael Roane advised, I'm sorry, ordered Mr. Varner to empty his pockets, which Mr. Varner did. Upon Mr. Varner emptying his pockets, Michael Roane then without permission or consent, pat searched Mr. Varner and again, finding no drugs or any weapons, advised Mr. Varner that he was now going to have a drug dog sniff around his vehicle. These considered true facts are clearly sufficient to plausibly suggest that a reasonable individual in Mr. Varner's position would not believe that he was free to terminate this encounter, but was instead under an individualized investigation for criminal wrongdoing. The district court analogized this case as close to the Drayton and the Monroe cases, and I think the court did that in error. In the Drayton case, Your Honor, that is Drayton v. 536 U.S. 194194, the officers in that case had conducted a routine drug interdiction on a bus. They had entered the bus and taken positions that they assured did not block the aisle or exit, quietly spoke to each individual passenger and advised them that they were doing a routine interdiction effort, and politely asked them that they would consent to a search of their person or their baggage. The issue in that case was whether or not the officers had to advise individuals that they had a right to refuse consent, which the court did not, or ruled they did not need to provide. The court noted that the officers ensured that the passengers had a free aisle to leave, spoke politely, provided no command to answer questions or propel consent. And the issue there, Your Honor, was clearly that this was a generalized investigation of a consensual encounter or routine encounter. And that is clearly distinct from the case at hand, where Mr. Varner was targeted individually and made to believe he was under the individual investigation for criminal wrongdoing. Okay. Counselor, Mr. Prierre, this is Judge Keenan. I'm a little bit concerned here because it seems that what you're doing is making an argument that is not reflected in your pleadings. In other words, where are the facts in your pleadings, other than command, that indicate that there was a seizure here? Yes, Your Honor. There's obviously the command to exit the building and to empty his pockets, Your Honor. But there's also the fact that there was an unrequested and unconsented to physical search. There was the presence of the officer. Have you pleaded those facts, that he did not consent? Yes, Your Honor, we did. Looking at the complaint in this matter, I'm trying to find the exact paragraph number for you, Your Honor. It says specifically under paragraph 17, once outside said establishment, Rohn commanded Mr. Varner to empty his pockets. And then finding nothing, Rohn physically searched Mr. Varner. And there was no indication within the statement that Mr. Varner was asked or ever consented. And in fact, that is the allegation that he by inference did not, obviously, consent or was asked. That's not what Judge Keenan asked you. She asked you, did you plead that it was done against his will or that he couldn't refuse? Or would you say that? No, Your Honor, we did not. Why didn't you? No, Your Honor, we did not specifically plead that Mr. Varner refused because Mr. Varner did not refuse. We did not specifically plead that he was not asked. Probably, Your Honor, I have to say that you plead that he felt that he could not refuse. Your Honor, I do not believe we specifically pledged that he felt that he could not refuse. We just pledged the facts supporting that particular allegation in the facts section, Your Honor. Isn't that a problem? You see, this is not just the fact that he did that. Police officers, they do that all day long. The question is, would a reasonable person have felt under the circumstances, you don't even plead that he did. He felt that way. Yes, Your Honor, we were pleading the facts. You can plead state of mind for your client. That's not a conclusion. You say state of mind that he felt he commanded and he didn't feel he couldn't refuse. He didn't plead those things. You didn't plead any of that, did you? No, Your Honor, we did not directly plead his state of mind. All right, go ahead. Of course, Your Honor, and the complaint does allege also in paragraph 35 that Mr. Officer Roan did demand to search Mr. Varner's body. It is really the totality of the circumstances of Mr. Varner having been singled out within the restaurant, ordered to leave, ordered to empty his pockets, searched without consent, and then advised they were going to run a dog around his car looking for drugs that led him to believe he was being individually targeted. This is much closer to the case of US v. Jones, Your Honor, where an officer followed an individual's car with out-of-state tags into a private parking lot on a apartment complex. Once the individual had parked, he pulled further up the one-way street such that his car blocked their exit should they have intended to leave, exited the car, immediately singled out the driver of the vehicle, walked up to him, asked him if he would lift up his shirt to confirm there was no weapons, asked if he minded if he searched him, and at that point, the court held that this was a seizure because it lacked all the traditional hallmarks of consensual encounter. Specifically, it was not a routine encounter, but one targeted at Jones, and that the officer's repeated intrusive questionings created the impression within Jones that he was being subject to an individualized criminal investigation of his wrongdoing and as such would not feel free to terminate the encounter. Those facts alleged in this case plausibly suggest that discovery would produce evidence that a seizure of Mr. Varner occurred under these circumstances without any lawful purpose, and the district court simply failed to consider those facts sufficiently in granting the defendant's motion to dismiss. Moving your honor to me. Your argument is that all reasonable inferences at this point should have been drawn that that's not even there was a reasonable inference that he was ordered and he did it that he didn't consent. That's your argument? Yes, your honor. The reasonable inference is that he did not feel he was free to terminate the encounter based on those previously stated facts, which was not drawn in his favor. Moving your honors to the second order in this case, the order granting summary judgment to the defendant on the motion, I'm sorry, on this claim of unlawful search. In this case, the court failed to consider the facts of the light most favorable to the plaintiff, drawing all reasonable inferences in his favor again, when the district court conducted a credibility determination and favored the testimony of one of the officers over that of Mr. Varner. Unfortunately, the incident in question was not audio or video recorded by any officer, nor was there any written report made. So the only evidence we have in this case is the testimony of the individuals involved, excuse me, namely the testimony of Lauren Varner, the testimony of Michael Roan, and the testimony of officer Johnson, the drug dog officer in the case. Officer Johnson testifies that he ran the drug dog around Mr. Varner's car. Outside of the view of anyone but himself, he alleges that the dog pressed his nose against the side of the vehicle, which was the alert. He then notified the other officers, in fact, there was an alert and Mr. Varner's vehicle was searched. Mr. Varner, on the other hand, testifies that he was standing next to officer Roan. They were both silently watching the drug dog run around the vehicle. The drug dog ran around the vehicle multiple times, each time gearing off to jump on the back of the police vehicle. And on the final time around the vehicle, officer Johnson slapped the hood of the vehicle. The dog jumped at the point where the slap occurred, and that officer Roan then turned to Mr. Varner and advised him, I now, the dog is skewed, I now have probable cause to search your vehicle, hand me your keys, which he did and a search occurred. Mr. Varner testifies that officer Johnson did not, he did not hear officer Johnson at any time alert anybody that there had been an alert during the course of this event. The district court stated that it was disregarding Mr. Varner's testimony because he did not have the expertise to determine what was an alert and that officer Johnson's testimony was not directly contradicted. And respectfully, your honor, I disagree with the district court on this point. Mr. Varner is stating the facts as he saw them. And if he is standing right next to officer Roan and he does not hear or see officer Johnson, give anybody in indication that there has been alert, but he does see what he believes, but he does see the officer slapped the car, the dog jumped and Michael Roan declared that in alert, which gives him probable cause those facts, while not direct evidence are circumstantial evidence that contradicts officer Johnson's testimony. There is no other evidence, but the testimony of the three involved. And so it comes down to a credibility determination between the three affidavits, the three testifying individuals. And that is each determination that is classically for the jury. I'm sorry, your honor. I missed part of your question there. What was that? Is Johnson even a party to the case? No, your honor. Officer Johnson is not a party to the case. Why not? I believe when it was originally filed, your honor, we did not have the information that officer Johnson was the person who had conducted the drug dog search. Our understanding was it was another member of the skyline regional drug task force. So the course of discovery officer Johnson was discovered to be the officer in question. And we simply did not at that time elect to add to this case. Going back to the issue at hand, your honor, the defendant attempts to assert that Mr. Johnson, Mr. Varner, I'm sorry, is simply piling speculation on top of speculation in order to create a genuine issue of material fact. And our position is that is actually absolutely incorrect. Mr. Varner is testifying as to the facts of what he saw and heard. And those facts create a conflict between the testimony of the only witnesses to the incident that is for the jury to decide. The defendant cites to the Glynn case for the proposition that Mr. Varner's testimony is simply unsupported speculation that should be disregarded. But this case is significantly distinct from Glynn. In Glynn, the individual was offered his testimony that some parts in a Cretan case were defective. His opinion, however, was his own testimony that the parts while they deviated from the standard were no doubt good and that the customer was satisfied with him. And in light of the concrete facts that contradicted his testimony or his opinion, Mr. Glynn was disbelieved that his testimony was said to be mere speculation or opinion that did not support a finding of a material fact in dispute. In this the actions of officer Rome, the actions of the dog and his own actions. And those actions are not contradicted by any hard or concrete facts anywhere else in the record. The only contradictions are in the testimony of the witnesses, which again, the weighing of witness testimony and accrediting or discrediting of that particular evidence is a classic function for the jury. I've reached the end of my time, Your Honor. All right. If you have any questions for me, I'll happily answer them. Thank you. Thank you, counsel. Ms. Johnson. Yes, Your Honor. Chief Judge Gregory, Judge Wetzel-Hinson, Judge Keenan. This is Carlene Johnson for appellee Michael Rome. The questions that were being asked of the attorney as to what other facts are alleged in the complaint other than the word commanded is exactly the questioning that the district court had of the plaintiff's counsel at almost the outset of this case. The transcript is in the record. What other than the word commanded are you alleging are facts that support this being a non-consensual encounter? And I would point out that all this time later, a year after the case was litigated, after the discovery was completed, the deadlines had passed, the extension that the plaintiff's counsel got for discovery had passed. And we're here in the Fourth Circuit now in Varner's own opening brief, particularly at pages 24 and 25. Varner himself equates the word commanded with request. It's referred to that Mr. Varner was requested. So I would submit that even Varner acknowledges exactly what it was that the district court was querying way back when in this litigation at the outset with respect to the count one claim, acknowledges that there aren't any facts here that are alleged showing, satisfying the Fourth Amendment implication that is fundamental to the claim count one is going to deposition. No, I'm referring to the opening brief in this, in this court, the Fourth Circuit, the opening brief of Mr. Varner. If you look at pages 24 and 25 of that brief, Mr. Varner, that's counsel's word. That's not his word is by his pleading that he says command unless there's a deposition or affidavit says otherwise. Well, we have, this is with respect to the motion to dismiss the count one claim, which was based on the allegations and the sufficiency of the facts alleged in count one for that claim. And so it comes down to a matter of what facts has the plaintiff alleged in the claim. And the word commanded is what the plaintiff has pointed to as the fact with respect to basing their camp, you know, Fourth Circuit Fourth Amendment claim on that. And plaintiff in their own opening brief in this Fourth Circuit has themselves interpreted the word commanded as being a request, which only further supports that the allegations in the complaint are not sufficient to plead satisfaction of the elements of a Fourth Circuit claim to show that this was not a consensual encounter. And I would further point out just procedurally with respect to this case, 10 days after Michael Rohn filed the motion for summary judgment, which was almost a year after the case had been litigated and we'd gone through discovery and all the deadlines had passed 10 days after Michael Rohn filed the summary judgment motion with respect to the count two, the only claim remaining in the case. Varner filed a motion to voluntarily dismiss the case. Michael Rohn opposed that having been put to the burden and expense of hearings and having to obtain court orders, even to take the plaintiff's deposition as well as the other witness depositions and having to make motions over the plaintiff's refusal to answer questions in the deposition about complaint allegations and having already filed this pending summary judgment motion and the district court, though she granted the summary judgment motion as to count two, having already dismissed count one, thought that the motion for voluntarily dismissal by the plaintiff was moot. But the district court said that if she were to rule on that motion to dismiss, the dismissal would be with prejudice and pursuant to rule 41A2, the district court has that discretion. So rule 41A2 provides that a dismissal of the plaintiff's request can only be by court order on terms that the court considers proper. And then coming into, Varner did not ask the district court to have his case go forward to trial. Quite the opposite. He wanted the district court to dismiss the case. And in fact, the reason that he gave was, and it's in the record with respect to the motion to dismiss and the reply brief that Varner filed in support of the motion to dismiss was that he wanted to add other parties to the case and have a whole new, a whole new case that had everybody, all officers in it, but he'd never filed a motion. He sought to have it consolidated, didn't do any of those things. And so then now having not asked the district court to let this case go to trial, Mr. Varner has now come into the fourth circuit asking that this case go to trial, which is not what it was he was even asking for in the district court. I would point out too, I found it perplexing in the opening brief and in the reply brief that Varner has filed in the fourth circuit. In his conclusion, page 47 of the opening brief and page eight of the reply brief, Varner only asked for reversal of the summary judgment motion, which is a count two claim. It doesn't even mention in there asking the court to do anything with respect to the dismissal of count one. The civil action requires the plaintiff to have alleged facts that are sufficient to show entitlement on the claim that he asserts. And there are elements of the fourth amendment claim and a reasonable search and seizure by a governmental actor. And I submit in the district court, I think properly ruled that on no more facts than the plaintiff has alleged with respect to count one, that he has not satisfied the elements of those claims under the applicable pleading standard and dismiss it. Now the district court dismissed it without prejudice. The plaintiff never amended, never sought to amend, not at any point during discovery, not at the conclusion of the discovery, at any point at all. I think that the and that it should be affirmed with respect. And there are a couple there. I'm sorry. So, so you're saying he didn't plead enough when he said that. He didn't plead facts that are sufficient to satisfy the element. And in fact, the number of, I won't go through. I think the plaintiff's counsel has misrepresented what, what some of the factual allegations and added things like marched directly to Varner and some other things I heard that are, that are not anywhere in this complaint. Also, there are other things in the complaint that further show a reasonable person in Varner's position would know that he could refuse that his liberty was not being restrained, that he could turn at the encounter because in fact, Varner did when he was asked to take a breathalyzer test. And he's alleged in the also a heading in the complaint actually that refers to a DWI that Mr. Varner refused. And he said he, he refused. He knew he could terminate the encounter. And that further shows that not only would an objectively reasonable person in Mr. Varner's shoes, no, we could terminate the encounter, but Mr. Varner himself knew that he did when he didn't want to take a breathalyzer. He left the scene, did he not? He left and the officers left it. It was a non-event. They went on their own ways. Only further showing that an objectively reasonable person in Mr. Varner's shoes. And in fact, Mr. Varner himself viewed this as something he could leave if he wanted to. It was a consensual encounter. There were no facts showing that it was coercive in any way and no facts that the court has sometimes looked to. And I'm thinking more recent cases and while in the criminal context, and I think that's a distinction here too, because of course, in the civil lawsuit, Varner bears the burden of alleging facts sufficient for his pleading obligations, but there are no allegations here about any sort of intimidation, racial profiling in the there's no blocking in of a car so that Mr. Varner can't exit or leave or go on his way. There's no uniform. I'm sorry. Isn't the putting here that he actually, you know, is a question of whether he felt free or not to leave. He actually exercised his right to leave. He refused to take the breathalyzer test. He left as you say, they went their own way. And that was that. Given the fact that he not only felt free to leave, he did leave, he actually left and he wasn't pursued. He wasn't restrained. That's that. What more is there to say? I will say nothing further. Move on to the summary judgment claim unless anyone has a pleading. Okay. So the count to claim has to do with the search of occurred after a drug, a free air drug dog sniff drug dog Zeke that was being handled by a canine officer from a separate agency. So Wayne city of Waynesboro police department in, in his opening brief, Mr. Varney agrees that drug dog Zeke alerted to Verner's truck. Mr. Varner states that it's uncontested that as a result of this dog alert, defendant Rhona search, he now had probable cause to search Mr. Varner's vehicle. Mr. Varner acknowledges that a drug dogs alert can provide probable cause for a search. Mr. Varner's only argument is he says is he disputes whether or not the alert was manufactured. Again, the Johnson's not even a defendant to begin with. And the idea that he manufactured some kind of positive alert, there are no facts to support that. It's total speculation. I mean, it's, um, he talks about whether Rouse, whether Rowan heard Johnson report the alert or whatever, whether he heard it or what that it's not even really relevant. But he's making a claim against the non-party that the non-party manufactured a positive alert. There's nothing, there's nothing manufactured about it. The, the dog who was apparently some kind of superstar and Johnson had a long relationship. And as far as we know, he's a dog push suppressed his nose against the look at the record here. It doesn't suggest any kind of manipulation or, or manufacture. So what is, I mean, what else is there? What is there to add? I don't, I don't know that I have anything to add. I think that's correct. It's not a credibility issue as Mr. Varner wants to represent it to be. It's a matter of having competent evidence and rule 56 itself refers to someone having to be competent to testify on the matter stated. The only competent evidence here is that this canine officer and his dog, they are certified by the Virginia police canine association, their training records. In fact, they had passed the most recent training for certification just in November of 2016, before this incident, which was in January of 2017. So just in the last two months, we're in a controlled environment. Zeke had a hundred percent accuracy. He found all of the drugs he was supposed to find and they didn't have any false alerts at all. And the, the, the Mr. Varner's attorney made reference to the canine office, having done this free air sniffed in a place where only he could see as if there was something secretive to that. That's, that's not accurate. The, the dog... Go over all of that in your, go over all of that in your brief. And quite rightly, I think, because of, I mean, this, this idea that he, he manufactured there, there are no facts in this record to support any such claim. They just aren't. So... That's what there is to say. The, the, I would address this other aspect that Mr. Varner has tried to make it sound secretive on, on the part of the canine officer or someone. Mr. Michael Rohn himself testified, he didn't recall which officer told him the dog had alerted. The evidence shows that Michael Rohn and Mr. Varner were standing next to each other, about 50 feet away from where Mr. Varner's truck was. The canine officer was handling the dog. They were going around the perimeter and the public parking lot of this vehicle. The dog was alerting on the passenger side door, which is on the other side of the vehicle from where Mr. Varner and Mr. Rohn were. That's not something secretive. That's where the dog was alerted. He was alerting by pressing his nose against the door and kept his feet on the ground, which is what his alert is according to his training and his experience. And this canine officer working with the dog, it's all laid out in the evidence. Mr. Varner and neither Mr. Varner nor Mike Rohn could see that side of the truck or the door, but there's no dispute that the canine officer reports the alert. And in fact, the recording of his call to dispatch reporting the positive alert at the tailgate parking lot is part of the record. One of the other officers, two of the other officers were other places in the parking lot and Michael Rohn didn't recall exactly which one conveyed to him that the canine officer's dog had alerted and the canine officer had announced that alert. But there's no dispute that there was that determination by the canine officer based on his handling of this drug dog with which he's certified. And it's completely a reliable drug dog that's all in the record. And of course, in any event, there was nothing here, not only to no evidence that it was a manufactured alert, but certainly no evidence that Michael Rohn had any reason to think that there was anything untoward at all about what the canine officer and the drug dog were doing and about the alert that was determined. And that does under the well-settled law provide probable cause for the search that followed. The whole thing is some sort of ludicrous conspiracy theory. I guess I don't know who the conspiracy is between. Is it between Johnson and the dog? I haven't had the pleasure of meeting Zeke, but he'll probably plead the fifth. Oh, you know, the evidence shows that Zeke is a superstar. He had 100% accuracy record in his training just two months before in a controlled environment. And certainly, I believe Chief Judge Gregory and Judge Keenan were also on this panel of the U.S. against Green case in Fourth Circuit 2014 that talked about the reliability of a dog and a drug dog being based on its performance in controlled testing environments, spoke about the Florida against Harris case with Justice Kagan's writing for the unanimous Supreme Court that talked about the presumption that a dog's alert provides probable cause for a search and the satisfactory performance in a certification or training program for the drug dog provides that reliability and that ability to rely upon that for probable cause for the search. And that's what we have here. Thank you. Thank you. All right. Mr. LePere? Yes, Your Honor. Please, the Court. I wanted to address a few issues that came up in the my co-counsel's arguments on this case. The first issue I want to address is that there is an assertion that Mr. Varner felt free to leave at any time because at the end of the encounter, after Officer Rohn had Mr. Varner's vehicle searched and had found nothing, and after he had been searched and there had been nothing found, Officer Rohn asked Mr. Varner to conduct a breathalyzer test and Mr. Varner declined. The assertion was that then Mr. Varner left the scene and therefore knew the entire time he could have terminated and left the scene. However, as alleged, the facts are slightly different. It is that when Mr. Varner was at the end of the search, he felt having had his truck searched, they asked him if he would take a breathalyzer if he declined, and then Officer Rohn left, not Mr. Varner. Mr. Varner actually remained at the Tailgate restaurant where he was. So that does not indicate somehow that he knew throughout the course of this that he was free to terminate. Counsel, you're missing the part about he said no. Yes, Your Honor. I'm not saying I agree with it, but you know, it's evident that he knew he could say no, which is a refusal. Notwithstanding that the officer walked off, can you address that in response to I think it was Judge Wilkinson's argument? Go ahead. Yes, Your Honor, and the difference here is that Mr. Varner said no to something that he was for the first time asked to consent to. He was asked to take a breathalyzer test and he said no, he was not told to do that. And that issue is completely different. That's a good point. It's the first time he was asked. Throughout the course of this encounter, Your Honor, he was commanded to leave the restaurant. He was commanded to empty his pockets. He was searched with no indication that there was a request. He was told he was going to have a dog dog ran around his vehicle. He was told there was no probable cause. Give him your keys. And then at the end, once all of this is done, he's had a thorough search of his vehicle. He's finally asked, will you take a breathalyzer? No, I'm not going to do that. I'm not driving. And then Officer Rowe left. So that doesn't indicate that he felt through all of these commands that he was able to leave. The second issue is my co-counsel brings up that there was an allegation or a reference to these commands as requests within the pleadings. And that is very accurate. That in Jones, the officer said, will you lift your shirt up so I can see if you're wrong? Do you mind if I pat you down for weapons? And that was still found to be a seizure. And here, the complaint uses the word commands, but either way, repeated and intrusive requests, even at our actual request that indicate an individualized investigation of criminal behavior by this particular person, leave a reasonable person subject to not feeling free to leave that particular encounter. And as the Monroe case makes very clear, an individual's subjective beliefs do not render a search constitutional or consensual or unconsensual. In Monroe, the individual testified that when an officer approached him at home and asked him for a DNA sample as part of an investigation, the serial rapes were everybody who fit the profile of the particular rapist was being asked for their blood, their DNA sample. He said, based on my belief of the relations between African-Americans and the police community, I did not feel free to terminate that encounter. And the court said that your subjective beliefs are irrelevant. The other in this shipping objective in this show are not there in that case. In this case, your honor, we submit that the objective and this show are there. Mr. Varner was repeatedly commanded to do things that were intrusive, such as emptying his pockets, submit to a search, leave his meal to go outside, grab his jacket, and then obviously to turn over his vehicle to be searched by a drug dog and himself be physically searched. And that is vastly different than the case law in question that they are addressing. The second issue is that the concern is not that Mr. or Officer Johnson, I'm sorry, was being secretive about the search when we sent him to the second issue at hand, your honors. The issue is that Officer Michael Rohn, Mr. Varner, and the other officers on the scene were on one side of the vehicle. The drug dog officer alerts, or I'm sorry, asserts that the dog alerted on a side where nobody but him could see it. Despite the clear policy of his own police department, there is no body cam video of this event. There's no audio recording of this event. He does eventually report to his dispatch sometime later that there was a alert, but on scene, I'm sorry, and that report to his dispatch does not include any indication of how aware or what the alert was. The only evidence is the individual's on-scene testimony of what they saw. Mr. Varner says he saw in his deposition testimony Officer Johnson run the dog around it, slapped his fender, at which point the dog jumped. He says he never saw, and Officer Johnson did not advise anybody because he could not hear, he could not see him make that advisement, the officer alerted him that there had been an alert. Having viewed the dog jump on the fender, Officer Rohn said, the dog is now alerted, I have probable cause, give me your keys. That is at odds with the testimony of Officer Johnson, which has no other evidence to support it other than his testimony. It may be unlikely, it may be unbelievable, but those are weightings of credibility of the testimony of the case that is for the jury that Officer Johnson was untrue and Mr. Varner was correct. The issue is Officer Rohn himself does not testify as to who told him or where he heard it, but he does testify quite contradictory to Mr. Varner that he was not watching the scene. And again, these distinct disputes of fact are material because they provide evidence that the alert, and the only alert that anyone was aware of, was the drug dog according to the experts in the case, that would result in manufactured probable cause. And the case law is clear that you cannot search or conduct a warrantless search based on manufactured probable cause. I understand the dog is reliable according to the evidence in the record and nobody disputes that. The dispute is over whether or not the alert was cued by Officer Johnson, whether or not Mr. Rohn saw that cue alert and knew it. And then I'll time your honors. Thank you so much for your argument counsel. We can't come down to shake your hands, but know that we appreciate very much your arguments here today and wish you well, be safe and stay well. Thank you so much. You're welcome. And we'll ask the deputy to adjourn the court for the day. Yes, sir. This honorable court stands adjourned until tomorrow morning, or this afternoon, sorry. God save the United States and this honorable court.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Barbara Milano Keenan